# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:10cv532

| | | |
|---|---|---|
| **LARRY WADDELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **ALVIN W. KELLER, Secretary of** | ) | |
| **the North Carolina Department** | ) | |
| **of Correction; and HERBERT JACKSON,** | ) | |
| **Administrator, Brown Creek Correctional** | ) | |
| **Institution,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon respondents' Motion for Summary Judgment (#7) and Motion to Expand Page Limitation (#8). Having carefully considered respondents' Motion for Summary Judgment and reviewed the pleadings, the court enters the following findings, conclusions, and Order dismissing the petition.

## FINDINGS AND CONCLUSIONS

### I.     Background

#### A.     Procedural History

Petitioner is an inmate incarcerated by the State of North Carolina at Brown Creek Correctional Institution, located in Polkton, North Carolina. On March 11, 1975, petitioner was convicted in the North Carolina General Court of Justice, Superior Court Division for

Mecklenburg County, of the first-degree murder of Alma Bertram Wood on July 12, 1974, and sentenced to death. State v. Waddell, 289 N.C. 19, 220 S.E.2d 293 (1975). On July 6, 1976, the United States Supreme Court vacated petitioner's death sentence and, on remand, he was re-sentenced by the North Carolina court to life imprisonment. Waddell v. North Carolina, 428 U.S. 904 (1976). This action, brought under 28, United States Code, Section 2254 seeks federal habeas relief based on petitioner's contention that he has served his sentence and that his further detention violates his federal constitutional protections.

Since entering the North Carolina prison system in the 1970's, petitioner has accumulated good time, gain time, and/or merit time credits. At the time petitioner was sentenced, Chapter 14-2 of the North Carolina General Statutes provided, in pertinent part, that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for 80 years in the State's prison." N.C.Gen.Stat. § 14-2 (1974). Despite the language of the statute, the North Carolina Department of Correction (hereinafter "DOC") treated a sentence of life as meaning imprisonment for the remainder of the inmate's natural life; thus, it never applied such credits to petitioner (or similarly situated inmates)[1] to reduce what DOC considered to be a length-of-life sentence. It was not until such reading was challenged by another, similarly situated inmate, Bobby Bowden, that the DOC considered a life sentence under the pertinent statute as a determinate sentence. In State v. Bowden, 193 N.C.App. 597

_____

[1]    A number of similarly situated inmates are proceeding with similar, consolidated actions in the United States Court for the Eastern District of North Carolina. Baggett v. Keller, 5:10-HC-2226-D (E.D.N.C. July 1, 2011). The court in Baggett recently entered its decision on identical claims, a copy which is found in this court's file as an attachment to docket entry #15.

(2008), the North Carolina Court of Appeals determined that a life sentence under Chapter 14-2 "is considered as an 80-year sentence for all purposes" and remanded the state habeas petition to the trial court to "determine how many sentence reduction credits [Bowden] is eligible to receive and *how those credits are to be applied*." Id., at 601 (emphasis added).[2]

In response to the decision in Bowden, the Respondent Alvin W. Keller, Jr., Secretary of the North Carolina Department of Correction, decided to proceeded on two independent tracks: one legal and the other practical. See Memorandum in Support, Ex. 1, Transcript of Jones Hearing, pp. 19-23 & 61 (hereinafter "Jones Trans"). While the first track was legal, actions taken in pursuit of the second "practical track" by DOC employees have resulted in petitioner raising issues herein. The second track required DOC employees to examine the sentences and credits of each inmate similarly situated to inmate Bowden (hereinafter " the Bowden class"). DOC "test runs" of the inmates sentenced under Chapter 14-2 (1974) who would be eligible for release if such credits were applied by DOC to reduce their sentences. Respondent Keller testified that "those were strictly test runs." Jones Trans., at p. 25. Apparently, this practical track resulted in emails and memoranda being generated by DOC employees that evinced misunderstanding and confusion surrounding the impact of the decision in Bowden, with some employees expressing their belief that the decision required the release of the Bowden class of inmates. Respondent Keller testified "I never ordered anyone's release." Id. After Bowden issued, the North Carolina Supreme Court issued Jones

---

[2]    The Supreme Court determined that it had improvidently allowed discretionary review and declined to review such decision. State v. Bowden, 363 N.C. 621 (2009).

v. Keller, 364 N.C. 249 (2010), discussed *infra*, which took up where <u>Bowden</u> left off.

Petitioner contends that when all the good time, gain time, and/or merit time credits (as well as credit for pre-trial confinement) are applied to his unconditional release date, he should have been released no later than June 25, 2008, and that he is now being held unlawfully by the State of North Carolina in violation of protections afforded him under the United States Constitution. Petition, at p. 33.

## B.    Petitioner's Contentions

Read in a light most favorable to him, petitioner raises the following contentions under Sections 2241(c)(3) and 2254:

I.    Petitioner earned sentence reduction credits without reservation or restriction;

II.    Petitioner has a constitutionally protected liberty interest in his sentence reduction credits and was deprived of his credits without Due Process of Law;

III.    Retroactive summary revocation of his sentence reduction credits violates the *Ex Post Facto* Clause of the United States Constitution; and

IV.    DOC's refusal to credit his sentence reduction credits to his unconditional release date infringes upon his entitlement to fair notice of the law.

## II.    Exhaustion of State Remedies

 Petitioner filed this action on October 22, 2010. In his petition, petitioner alleges that he has no remedy in state court because similarly situated inmates have raised identical claims for state *habeas* relief and did not prevail. Petition, at pp. 2-3 (<u>citing</u> <u>Jones v. Keller</u>, <u>supra</u>; <u>Brown v. N.C. Dep't Corr.</u>, 517PA09, 697 S.E.2d 327 (N.C. Aug. 27, 2010)).

Petitioner alleges it would, therefore, be futile for him to first seek relief in state court before bringing this federal action. Petition, at p. 3.

Simultaneous with the filing of this action, petitioner filed a state habeas petition in the North Carolina Supreme Court, "in order to ensure that his federal habeas claims are not procedurally defaulted." Pet., at 28. The state petition was summarily denied by the North Carolina Supreme Court November 4, 2010. Waddell v. Keller, ___ N.C. ___, 705 S.E.2d 342 (Nov. 4, 2010).

Prior to bringing an action under Section 2241 or 2254 petitioner must exhaust his state remedies. In Longworth v. Ozmint, 377 F.3d 437(4th Cir. 2004), the Court of Appeals for the Fourth Circuit held that to satisfy the exhaustion requirements of Section 2254, a state prisoner must complete at least one round of the state's established appellate review process by presenting the ground for relief in a face-up and square fashion. Id., at 448. In Mallory v. Smith, 27 F.3d 991 (4th Cir.), cert. denied, 513 U.S. 1047 (1994), the Court of Appeals for the Fourth Circuit held, as follows:

> The exhaustion requirement can promote comity between the state and federal systems only if state courts actually have a meaningful opportunity to oversee their own operations. It is therefore required that a petitioner seeking federal habeas review make more than a perfunctory jaunt through the state court system, *see Picard v. Connor*, 404 U.S. 270, 275-76, 92 S.Ct. 509, 511-12, 30 L.Ed.2d 438 (1971), and *habeas* review in the federal courts will be available only after the state courts have been "provided a full and fair opportunity to review earlier state court proceedings," *Whittlesey*, 897 F.2d at 145; see also Picard, 404 U.S. at 275-76, 92 S.Ct. at 511-12. Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that state remedies have, in fact, been exhausted. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir.1992); *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir.1989).

\* \* \*

> [T]he exhaustion requirement demands that the petitioner do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented faceup and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.

Id., 27 F.3d at 994-95 (citation and corresponding quotation marks omitted).

This court will not reach the issue of whether filing a state *habeas* petition directly with the North Carolina Supreme Court completes one round of the state's established appellate review process. See Woodford v. Hgo, 548 U.S. 81, 92 (2006). Instead, the court finds that the state has conceded that petitioner has exhausted his administrative remedies. Respondent's Brief in Support (#9), at p. 9. While federal courts have the discretion to consider whether a petitioner has indeed exhausted administrative remedies even where exhaustion is not raised by the state as a procedural bar, Granberry v. Greer, 481 U.S. 128 (1987), petitioner acknowledges that Jones is the final word from the state's highest court on his claims and that he is "not raising an issue that the North Carolina Supreme Court has not already passed upon." Petition, at p. 27. Thus, it is clear that the decisions of the North Carolina Supreme Court in Jones, supra, and Brown, supra, are the final word on all the constitutional issues raised by the Bowden class of inmates, including petitioner. While the North Carolina Supreme Court did not reference either decision in its summary dismissal of petitioner's state *habeas* petition, see Waddell v. Keller, supra, it is reasonable to infer that such Court's established precedent in Jones and Brown formed the basis of its decision. Based on the circumstances presented in this case, the court finds that the exhaustion

requirements of 28 U.S.C. § 2254(b)(1)(B) and § 2254(b)(2) and (3) have been met.

### III.    Statute of Limitations

While respondents do not challenge exhaustion, they do contend that this action was filed well beyond the statute of limitations applicable to federal habeas proceedings. Respondents contend that petitioner's case became final for purposes of direct review approximately nineteen years before the April 24, 1996, effective date of the *Anti-Terrorism and Effective Death Penalty Act* ( hereinafter "AEDPA"). Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attached when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." (citations omitted)).   After the AEDPA became effective, petitioner had one additional year or until April 24, 1997, to timely file his current federal habeas petition. 28 U.S.C. § 2244(d)(1); Hernandez v. Caldwell, 225 F.3d 435, 437-38 (4th Cir. 2000). As discussed above, petitioner filed his current federal habeas petition on October 22, 2010, making such petition over 13 years out-of-time.

In response, petitioner has argued that his cause of action accrued on October 29, 2009, the date he contends he should have been unconditionally released and that his filing of this action on October 22, 2010, was within the one-year period of limitation contained in Section 2244(d)(1).   Petitioner's Response (#11), at 18-19.   He argues that he could not have reasonably foreseen that DOC would continue to hold him beyond that date.   Id. Section 2244(d)(1)(D) provides, however, that the period of limitation begins to run from "the date on which the factual predicate of the claim or claims presented could have been

discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Put another way, the statute of limitations for federal habeas petitions begins to run when an inmate knows of the constitutional wrong, not when that wrong becomes manifest.

In sum, it is petitioner's contention that he could not have been aware of the factual predicate underlying this federal *habeas* petition until the North Carolina Court of Appeals issued its decision in <u>State v. Bowden</u>, 193 N.C. App. 597 (2008), <u>disc. review improvidently allowed</u>, 363 N.C. 621 (2009), which was favorable to the <u>Bowden</u> class of inmates. Without directly stating as much, petitioner is attempting to apply a commencement date similar to that provided in Section 2244(d)(1)(C), which provides commencement of the one year period from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). In apparent recognition that Section 2244(d)(1)(C) has no application to decisions of state courts, or that such would not be a new right, petitioner has apparently relied on calculations, emails, and representations made by the DOC in response to or in anticipation of the decision in <u>Bowden,</u> which was left undisturbed when, in October 2009, the North Carolina Supreme Court withdrew *certiorari.* Put another way, petitioner appears to contend that he only "discovered" he had a federal claim when DOC employees took action or failed to take action based on the final decision in <u>Bowden</u>. It is clear, however, that the appropriate commencement date is governed by Section 2244(d)(1)(D), which is "the date on which the factual predicate of the claim or claims presented could have been discovered through the

exercise of due diligence."  This argument is unavailing as neither the factual predicate nor the operative constitutional rights were unavailable to petitioner before the decision in Bowden.

By not filing this claim with this court on or before April 24, 1997, the claim is barred and no adequate reason has been provided to otherwise toll the operation of the statute of limitations. 28 U.S.C. § 2244(d)(1); Hernandez v. Caldwell, supra.  The court will, therefore, dismiss this claim with prejudice as time barred.  This court recognizes, however, that there are differing views among the appellate courts on this issue.  Wade v. Robinson, 327 F.3d 328, 333 (4th Cir 2003) (limitations date begins to run from the date petitioner could have discovered factual predicate through public sources); c.f. Evans v. Sec'y Pa. Dep't of Corr, 2011 WL 1833237 (3d Cir. May 16, 2011) (no procedural default where facts unknown to petitioner).  While this court is constrained to follow the decisions of the Fourth Circuit, the court will, in the alternative, address the merits of petitioner's claim in an abundance of caution.

## IV.    Evidentiary Hearing

While petitioner requests an evidentiary hearing in his petition, there is no need to conduct such a proceeding as petitioner contends that Jones and Brown are controlling (Petitioner's Brief in Response, at 3) and contends that his claims are identical to the claims asserted by the petitioner's in those actions:

> Petitioner's averments of similarity to Jones and Brown are borne out by a comparison of this petition with the litigation in *Jones* and *Brown*. Mr. Waddell is not raising an issue that the North Carolina Supreme Court has not

already passed upon.

Petition, at p. 27.  The court will not, therefore, conduct an evidentiary hearing as the transcripts in the underlying proceedings in both <u>Jones</u> and <u>Brown</u> are found in the record supporting respondent's Motion for Summary Judgment and are unopposed.

**V.  Discussion of the Merits of Petitioner's Claims**

As an alternative basis for decision, the court has closely reviewed the merits of the petition.  Specifically, the court has considered the merits of petitioner's claim to aid further review in the event it is determined by a reviewing court that the petition was timely filed.

**A.  Applicable Standards**

**1.  Summary Judgment Standard**

Respondent has moved for summary judgment and petitioner has timely filed his response. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a).  The rule goes on to provide procedures for petitioner to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under

governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## 2.    Impact of the AEDPA on the Standard of Review

Determination of a Section 2254 petition filed by a state prisoner is governed by the AEDPA. Federal courts are now constrained to grant relief only if the state-court ruling

> resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the
> United States.

28 U.S.C. § 2254(d)(1). Decisions of the Court of Appeals for the Fourth Circuit, while certainly binding on this court in federal *habeas* proceedings, are not binding on the courts of the State of North Carolina because, under the AEDPA, such decisions do not amount to "clearly established Federal law." 28 U.S.C. 2254(d)(1). Thus, under the AEDPA, this court must determine whether a state-court decision is "contrary to" clearly established federal law as established by the United

States Supreme Court.

In the context of the issues presented by petitioner herein, the United State Supreme Court has determined that a state-court decision is contrary to clearly established federal law if the state court " applies a rule that contradicts the governing law set forth in [its] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [that] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405 (2000). The Court has also held that a "state court need not even be aware of [Supreme Court] precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003)(citation and corresponding quotation marks omitted). In the end, the state court's decision is an unreasonable application of law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413. To be entitled to relief on summary judgment, petitioner must prove that the state-court adjudication of his claims was "not only erroneous, but objectively unreasonable." Middleton v. McNeil, 541 U.S. 433, 436 (2004)(citations and corresponding quotation marks omitted).

The issue for this court is "not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). "The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Further, a state court's findings of fact are presumed correct unless the petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In addition, under 28 U.S.C. § 2254(d)(2), a *habeas* court may only grant relief if the relevant state-court adjudication "resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## B.    Discussion of Petitioner's Contentions

### 1.    First Contention: The Existence of Unconditional Time Credits

Petitioner's first contention is that  he earned sentence reduction credits without reservation

or restriction. The North Carolina Supreme Court directly addressed this issue in <u>Jones</u>, as follows:

> DOC argues, and the trial court found as fact, that "[t]he Department of
> Correction has never used good time, gain time, or merit time credits in the
> calculation of unconditional release dates for inmates who received sentences of life
> imprisonment." More specifically, DOC acknowledges that Jones earned gain and
> merit time, but states that these credits were not applied to reduce the time to be
> served on his sentence in any way. Accordingly, the inmate records maintained for
> Jones by DOC show his sentence as "99/99/99," a code that denotes a sentence of
> life imprisonment. These records also reflect a release date of "Life." DOC's position
> is that gain and merit time were only recorded in case Jones's sentence was
> commuted by a governor, at which time they would be applied to calculate a release
> date. DOC further contends that it awarded Jones good time solely for the purposes
> of allowing him to move to the least restrictive custody grade and to calculate his
> parole eligibility date, and not for the purpose of allowing Jones unconditional
> release. Thus, according to DOC, various types of credits were awarded to Jones for
> different and limited purposes only, but no time was awarded for calculating a date
> of unconditional release. Because we defer to DOC's interpretation of its regulations,
> we need only consider whether DOC's interpretation that Jones's good time, gain
> time, and merit time credits were not awarded to him for purposes of unconditional
> release is statutorily and constitutionally permissible.

<u>Jones v. Keller</u>, 364 N.C. at 254-255.  After first determining that  "[a]n award of time by DOC need

not be an all-or-nothing award for unlimited uses," <u>id.</u>, at 255, the Court in <u>Jones</u>  held that DOC's

application of its own regulations to accomplish its stated goals of assuring public safety and the

preparedness of inmates to return to society was strictly administrative,  outside the purview of the

courts, and within the DOC's statutory authority.  <u>Id.</u>, at 256.

To the extent petitioner is basing his first contention on an alleged violation of state

regulatory procedure, state law, or the separation of powers doctrine, or any provision of the North

Carolina Constitution, such contention is not cognizable on federal habeas review. <u>Estelle v.</u>

<u>McGuire</u>, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus does not lie for errors of state law.")  Thus, the determination in <u>Jones</u> that the DOC's application of its own regulations was within its state statutory authority is not within the scope of this court's review. Petitioner's contention that he earned sentence reduction credits without reservation or restriction is without factual support or legal merit as the <u>Jones</u> Court clearly determined that, as a matter of state statutory law, the DOC awarded credits to <u>Bowden</u> class petitioners for different and various purposes, but never awarded such credits for calculating a date of unconditional release.

After making such statutory determination, the Court in <u>Jones</u> then considered whether such interpretation was constitutionally permissible by reviewing each constitutional challenge.  As petitioner's constitutional challenges herein are identical, this court will consider each state-court determination in the context of the federal constitutional right asserted.

## 2.       Second Contention: Due Process

In his second contention, petitioner asserts that he has a constitutionally protected liberty interest in his sentence reduction credits and was deprived of his credits without Due Process of Law.  The North Carolina Supreme Court addressed such issue in <u>Jones</u>:

> The United States Supreme Court has held that "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675, 685 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). However, "due process is flexible and calls for such procedural protections as the particular situation demands.... [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484, 494 (1972). While a prisoner retains basic constitutional rights, *State v. Primes*, 314 N.C. 202, 208, 333 S.E.2d 278, 281 (1985), the Supreme Court has found that an inmate's liberty interests derived from the Fourteenth Amendment are limited, given the nature of incarceration, *Helms*, 459 U.S. at 467, 103 S.Ct. 864 ("[O]ur decisions have consistently refused to recognize more than the most basic liberty interests in prisoners."). Nevertheless, "a State may create a liberty interest

protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." *Id.* at 469, 103 S.Ct. 864; *see also Sandin v. Conner*, 515 U.S. at 483-84, 115 S.Ct. 2293. Prisoner benefits in the form of good time, gain time, and merit time arise from such statutes or regulations. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935, 951 (1974) (stating that "the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison ... [b]ut the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances").

The liberty interest alleged to be at issue here thus is one created by the State through its regulations. When a liberty interest is created by a State, it follows that the State can, within reasonable and constitutional limits, control the contours of the liberty interest it creates. In other words, the liberty interest created by the State through its regulations may be limited to those particular aspects of an inmate's incarceration that fall within the purview of those regulations. DOC has interpreted its regulations as permitting the award of different types of time credits for certain purposes and has, in fact, awarded those credits to Jones for those purposes. On the record before this Court, DOC has taken no action against Jones for punitive reasons. Because Jones has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a constitutionally protected liberty interest.

Petitioner contends, however, that his credits should be applied toward calculation of the date of his unconditional release. We disagree. As indicated by *Wolff*, *Helms*, and *Sandin*, Jones's liberty interest in good time, gain time, and merit time is limited. Thus, his liberty interest, if any, in having these credits used for the purpose of calculating his date of unconditional release is *de minimis*, particularly when contrasted with the State's compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public. The record indicates that Jones is eligible for parole and has received annual parole reviews, but that the Parole Commission consistently has declined to parole him. Accordingly, Jones has received the process that is due him as an inmate eligible for parole, when the State's corresponding interest is assuring that inmates are safely released under supervision. Assuming without deciding that DOC's procedures for determining parole adequately protect an inmate's due process rights to consideration for parole, those procedures are also adequate to preserve Jones's constitutional rights while still permitting the State to withhold application of Jones's good time, gain time, and merit time to the calculation of a date for his unconditional release. He has no State-created right to have his time credits used to calculate his eligibility for unconditional release. Jones's due process rights have not been violated.

This State interest in ensuring public safety is particularly pronounced when dealing with those convicted of first-degree murder. *See State v. Rorie*, 348 N.C. 266, 271, 500 S.E.2d 77, 80 (1998) (describing first-degree murder as "this most serious crime"), *superseded by statute*, Act of May 8, 2001, ch. 81, secs. 1, 3, 2001 N.C. Sess. Laws 163, 163-65, *on other grounds as recognized in State v. Defoe*, 364

N.C. 29, 691 S.E.2d 1 (2010); *see also Graham v. Florida*, --- U.S. ----, ----, 130 S.Ct. 2011, 176 L.Ed.2d 825, 842 (2010) (stating that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers"); *State v. Davis*, 290 N.C. 511, 548, 227 S.E.2d 97, 119-20 (1976) ("Murder in the first degree is obviously the most serious of the felonious homicides."). The State has a duty to seek to ensure public safety through the orderly release of prisoners who are both under adequate supervision and prepared for resuming life outside of confinement. See N.C.G.S. § 15A-1371(d) (2009) (setting forth conditions under which the Post-Release Supervision and Parole Commission may refuse to release a prisoner on parole). DOC's determination that Jones's immediate unconditional release would endanger public safety in any respect is a compelling State interest outweighing any limited due process liberty interest Jones may have in application of his good time, gain time, and merit time credits to his unconditional release.

In addressing Jones's contentions, we are aware that DOC's regulations currently define good time, gain time, and merit time as "[t]ime credits applied to an inmate's sentence that reduce[ ] the amount of time to be served" and state that "[g]ood time is sentence reduction credit awarded, at the rate of one day deducted for each day served in custody for good behavior and/or without an infraction of inmate conduct rules." DOC Manual ch. B, § .0110(a), (f) (Oct. 5, 2007). These regulations were promulgated by DOC years after Jones was sentenced, see 5 NCAC 2B.0110(6) (Apr. 1995); id. 2B.0102 (Sept. 1983), when no challenge had been raised to the State's position that those sentenced to life pursuant to the version of section 14-2 in effect between 8 April 1974 and 30 June 1978 had been given an indeterminate sentence. Except for this limited time period, life sentences unquestionably were and still are indeterminate sentences. No regulation explicitly provides that credits are to be used to calculate an unconditional release date, and DOC asserts that it never considered that these regulations applied to Jones or other inmates similarly situated for the purpose of calculating an unconditional release date. Because the regulations were understood to be inapplicable for that purpose, the State did not fully prepare Jones for unconditional release. In light of the compelling State interest in maintaining public safety, we conclude that these regulations do not require that DOC apply time credits for purposes of unconditional release to those who committed first-degree murder during the 8 April 1974 through 30 June 1978 time frame and were sentenced to life imprisonment.

Id., at 256-58.  In determining that the Due Process Clause of the United States Constitution was not

violated, the North Carolina Supreme Court reviewed decisions of the United States Supreme Court

and concluded that Due Process was not violated because Bowden class inmates:

    (1)       have no state-created right to have  time credits used to calculate eligibility for

               unconditional release;

(2)     that the immediate unconditional release of such inmates would endanger public safety in any respect is a compelling state interest outweighing any limited due process liberty interest such inmate may have in application of his good time, gain time, and merit time credits to his unconditional release; and

(3)     in light of the compelling state interest in maintaining public safety, the applicable state regulations do not require that DOC apply time credits for purposes of unconditional release to those who committed first-degree murder between April 8, 1974 , and June 30, 1978, time frame and were sentenced to life imprisonment.

Id.

The issue for this court is "not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold." Schriro v. Landrigan, supra.  Review of the transcript of the hearing in Jones as well as review of precedent of the United States Supreme Court reveals that the Due Process decision in Jones is not based on an unreasonable determination of facts or an unreasonable application of clearly established federal law.  In Wolff v. McConnell, 418 U.S. 539 (1974), the Court held that an inmate had a cognizable "liberty interest" in a shortened prison sentence where disciplinary procedures were used to revoke good time credits previously awarded pursuant to state statute. Later, the Court held that a "liberty interest" protected by Due Process also exits if an inmate has a "legitimate expectation" that he will be released at a certain time.  Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 11-12 (1979).  In this case, there is no evidence that the DOC *ever* applied good time, gain time, and merit time credits to petitioner's unconditional release date.  Thus, petitioner had no legitimate expectation that he would be unconditionally released any time sooner than eighty years minus credit for any pre-trial confinement; equally, he has no viable

argument under federal law that respondents took away any liberty interest without Due Process of law.

The summary Order of the Supreme Court of North Carolina denying petitioner's state *habeas corpus* petition, raising this same due process claim, is also entitled to deferential review under Section 2254(d) and (e), and will be upheld for the same reasons and authorities discussed above in regard to the Jones opinion. See Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999) ("Where, as here, the state supreme court has adjudicated a claim on the merits but has given no indication of how it reached its decision, a federal habeas court must still apply the AEDPA standards of review," (citations omitted)), aff'd, 528 U.S. 225 (2000). Petitioner's Due Process claim is without merit and the decisions of the North Carolina Supreme Court in Jones and Waddell will be left undisturbed under the deferential standards of review contained in 28 U.S.C. § 2254(d) and (e).

### 3. Third Contention: *Ex Post Facto* Violation

In his third contention, petitioner contends that retroactive, summary revocation of his sentence reduction credits violates the *Ex Post Facto* Clause of the United States Constitution. Petitioner admits on pages 25-28 of his petition that the inmate in Jones raised the substance of petitioner's current *ex post facto* claim in the Supreme Court of North Carolina, and that the Court's decision in Jones is the final word on this claim as far as the state courts are concerned.

The court has first considered the determination of the North Carolina Supreme Court in Jones. In addressing such *ex post facto* claim, the Court held, as follows:

We next consider Jones's *ex post facto* argument. He contends that DOC's

**-19-**

interpretation of its regulations has retroactively increased the punishment for his offense after the offense was committed. The trial court concluded that failing to use good time, gain time, and merit time credits to calculate an unconditional release date for Jones was not an *ex post facto* violation.

The constitutions of both the United States and North Carolina prohibit the enactment of *ex post facto* laws. U.S. Const. art. I, § 10, cl. 1 ("No state shall ... pass any ... ex post facto law...."); N.C. Const. art. I, § 16 ("Retrospective laws, punishing acts committed before the existence of such laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no ex post facto law shall be enacted."). The federal and North Carolina constitutional *ex post facto* provisions are analyzed "under the same definition." *State v. Wiley*, 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002), *cert. denied*, 537 U.S. 1117, 123 S.Ct. 882, 154 L.Ed.2d 795 (2003). Most pertinently here, the *ex post facto* prohibition applies to: " 'Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " *Id.* (*quoting Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30, 38-39 (1990) (*quoting Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648, 650 (1798))).

Legislation that retroactively alters sentence reduction credits in effect at the time a crime was committed can be an unconstitutional *ex post facto* law. *See Weaver v. Graham*, 450 U.S. 24, 25, 36, 101 S.Ct. 960, 67 L.Ed.2d 17, 20-21, 28 (1981) (finding an *ex post facto* violation in Florida legislation that altered the availability of good time sentence reduction from a convicted prisoner's sentence). However, Jones does not allege that any legislation or regulation has altered the award of sentence reduction credits. Nor has DOC changed its interpretation of its applicable regulations. Accordingly, the superior court correctly found that Jones has suffered no *ex post facto* violation.

Jones v. Keller, 364 N.C. at 258-59. Again, the issue is "not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold." Schriro v. Landrigan, supra.

Review of the transcript of the hearing in Jones as well as review of precedent of the United States Supreme Court reveals that the decision in Jones is not based on an unreasonable determination of facts or an unreasonable application of clearly established federal law. It is undisputed that the DOC has never awarded credits toward an unconditional release date to prisoners serving life sentences. Jones Hearing Transcript, at pp. 38, 48-51, & 58. In response to respondents' motion, petitioner states that emails, memoranda, and other internal correspondence

of DOC employees (which appear to have been generated in the event the courts determined that the Bowden class inmates would be released or based on confusion surrounding the decision in Bowden) do not form any basis of his claim, arguing as follows:

> Respondents mischaracterize Petitioner's asserted entitlement to sentence-reduction credits, implying that it derives from internal DOC memoranda and e-mail correspondence. Resp't. Br. Supp. Summ. J. 22. Petitioner makes no such claim. Rather, Petitioner's liberty interest in his earned and awarded sentence-reduction credits arises out of North Carolina laws, regulations, and policies regarding sentence-reduction credits.

Petitioner's Response, at p. 2. Even though petitioner appears to have either abandoned or disavowed any claim based on internal correspondence at DOC, such internal work product of DOC employees does not, in any event, create an *ex post facto* issue as it is undisputed that no final agency determination had been made by the Secretary of the Department of Correction.

Further, the decisions in Jones as well as the summary decision in Waddell involved factual situations distinguishable from decisions of the United States Supreme Court in other cases in which it found *ex post facto* violations in awarding credits to inmates. In Lynce v. Mathis, 519 U.S. 433 (1997), the Court held that a state statute that cancelled early release credits that had already been awarded created an *ex post facto* violation. Here, the North Carolina legislature has not enacted a statute requiring DOC to apply a prisoner's accumulated good time, gain time, or merit time credits to reduce an unconditional release date on a life sentence. The undisputed record shows that such credits have never been applied to reduce petitioner's life sentence, he has not been released, and no statute has been enacted cancelling any credits he already received. Likewise, in Weaver v. Graham, 450 U.S. 24 (1981), a state legislature enacted a law reducing the accumulation of monthly gain time credits in a manner that extended the prisoner's time in prison by two years, and the Court found that it was the effect of the law that created an *ex post facto* violation because it made

punishment for crimes committed before the enactment more onerous.  In this case, petitioner's punishment is not more onerous.  Clearly, petitioner's good time credits have not changed as they allow for his promotion to a lower custody level and to advance parole eligibility.  Further, his gain time  and merit time credits remain available in the event he persuades the Governor of North Carolina to commute his sentence.  As the North Carolina Supreme Court determined, the fact that such credits will not reduce the length of his life sentence constitutes no change as such credits were never awarded for that purpose.

The summary Order of the Supreme Court of North Carolina denying petitioner's state *habeas corpus* petition, raising this same *ex post facto* claim, is for the reasons discussed above also entitled to deferential review under Section 2254(d) and (e), and will be upheld for the same reasons and authorities discussed above in regard to the <u>Jones</u> opinion.  Petitioner's *ex post facto* claim is without merit and the decisions of the Supreme Court of North Carolina in <u>Jones</u> and <u>Waddell</u> will be left undisturbed under the deferential standards of review contained in 28 U.S.C. § 2254(d) and (e).

### 4.        Fourth Contention: Fair Notice of the Law

In his fourth contention, petitioner argues that DOC's refusal to apply his sentence reduction credits to his unconditional release date infringes his entitlement to "fair notice of the law." Petitioner admits on pages 25-28 of his petition that the inmate in <u>Jones</u> raised the substance of petitioner's fair notice claim in the Supreme Court of North Carolina and that such Court's decision in <u>Jones</u> is the final word on this claim as far as the state courts are concerned.

The court has closely read petitioner's response and can find no argument responsive to the respondents' Motion for Summary Judgment on "fair notice" contention. While such contention appears to have been abandoned under Rule 56, the court has considered the substance of

petitioner's argument set forth in his petition:

> The concept of fair notice undergirds [Petitioner's] other constitutional claims. "Through [the ex post facto] prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981). The retroactive evisceration of [Petitioner's] sentence reduction credits offends the ex post facto clause, as it has "the effect of lengthening [his] period of incarceration." *Lynce v. Mathis*, 519 U.S. 433, 443 (1997).

> And if the extension of [Petitioner's] sentence would be "barred by the Ex Post Facto Clause . . . it must follow that [the courts are] barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie v. City of Columbia*, 378 U.S. 347, 353-54 (1964); *Rogers v. Tennessee*, 532 U.S. 451, 457-59 (2001) (judicial action violates the due process clause if it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue such that it infringes on the core due process concept of the right to fair warning.").

> By implementing an unwritten policy that contradicts the plain language of DOC regulations, policies and procedures, DOC "refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate [continued detention]" *Carmell v. Texas*, 529 U.S. 513, 533 (2000). As the U.S. Supreme Court had held, "[t]here is plainly a fundamental fairness interest, even apart from any claim of reliance or notice, in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." *Id.* at 533, 146 L.Ed.2d at 594-95.

Petition, at pp. 52-54. Thus, assuming that petitioner has not abandoned this contention, it appears that his contention that respondents have denied him "fair notice of the law," such contention was adjudicated in state court in the context of petitioner's due process and *ex post facto* claims, and such adjudication by the North Carolina Supreme Court resulted in a decision that was a reasonable application of clearly established federal law, as discussed above.[3]

## VI. Conclusion

---

[3] While petitioner notes Equal Protection concerns in the context of the <u>Jones</u> proceedings in paragraph 89 of his petition, petitioner has not raised an Equal Protection argument even though the North Carolina Supreme Court specifically addressed such argument in <u>Jones</u>.

The task for a federal *habeas* court is to determine whether the state court unreasonably applied clearly established decisions of the Supreme Court.  In <u>Williams v. Taylor</u>, <u>supra</u>, the Court held that

> a state-court decision ... involves an **unreasonable application** of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id.</u>, at 407 (emphasis added). The Court goes on to hold that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u>, at 409.  For the reasons discussed above, this court cannot find that the North Carolina Supreme Court's application of clearly established federal law was objectively unreasonable.  The court has also considered the petition in light of a recent decisions of the  United States Supreme Court, in which the Court held, as follows:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S.Ct. 1166.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

<u>Harrington v. Richter</u>, ___ U.S. ___,  131 S.Ct. 770, 786 -787 (Jan. 19, 2011).  Finding that the North Carolina Supreme Court's application of federal precedent was not "so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," id., 131 S.Ct. at 786–87, the court will, in the alternative to dismissing this action as time barred, grant respondent's Motion for Summary Judgment on the merits and deny the petition.

## VII.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this court will issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).   In this case, the court has determined that this action is time barred.  While it appears clear that such decision is consistent with precedent of the Court of Appeals for the Fourth Circuit, other reasonable jurists have reached different conclusions in other circuits, as discussed above. To secure the certificate, petitioner must also demonstrate that he has stated a *debatable* claim of denial of a constitutional right.  While the court believes it has in its alternative decision reached the correct result, petitioner has stated what the court believes to be a debatable constitutional claim and that reasonable jurists could reach a contrary result, just as Honorable Patricia Timmons-Goodson and Honorable Robin E. Hudson, Justices of the North Carolina Supreme Court, did in their dissent in Jones.  See Jones v. Keller, 364 N.C. at 263-271.

## ORDER

**IT IS, THEREFORE, ORDERED** that  respondents' Motion to Expand Page

Limitation (#8) and Motion for Summary Judgment (#7) are **GRANTED** and the Petition for Writ of Habeas Corpus is **DISMISSED** as time barred; and

**IT IS FURTHER ORDERED,** in the alternative, that respondents' Motion for Summary Judgment (#7) is **GRANTED** on the merits, and the Petition for Writ of Habeas Corpus is **DENIED** as petitioner has not shown that the North Carolina Supreme Court's decision on the claims presented to this court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

**Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this court ISSUES a certificate of appealability for the reasons discussed above. 28 U.S.C. § 2253(c)(2).**

Signed: September 5, 2011

Max O. Cogburn Jr.
United States District Judge